### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOEL K. R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 1905 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff Joel K. R. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court affirms the Commissioner's decision.

### BACKGROUND

Plaintiff protectively filed for DIB on March 11, 2019, alleging disability since May 8, 2018 due to chronic back pain/spinal stenosis, lumbar radiculopathy, chronic migraines, right shoulder/neck pain, and depression. (R. 241, 266). Born in 1982, Plaintiff was 35 years old as of the alleged disability onset date making him at all relevant times a younger person (under age 50). 20 C.F.R. § 404.1563(c). He completed one year of college and lives with his wife and three kids. (R. 42, 267). Plaintiff spent about 12 years

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

1

working as a home health aid and/or a substitute school aide from November 2001 to August 2013. (R. 268). He then worked for a year and a half as a custodian until February 2014. (R. 268). After that, Plaintiff was a dock worker at a warehouse for a time but he quit in January 2015 following an injury on the job and has not engaged in any substantial gainful activity since that date. (R. 268, 597).

The Social Security Administration denied Plaintiff's application initially on May 24, 2019, and again upon reconsideration on October 11, 2019. (R. 114-37). He filed a timely request for a hearing and appeared before administrative law judge David R. Bruce (the "ALJ") on September 24, 2020. (R. 29). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Sara Gibson (the "VE"). (R. 31-57). On November 2, 2020, the ALJ found that Plaintiff's degenerative disc disease of the back is a severe impairment, but that it does not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-17). After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: occasional climbing of stairs and ramps; occasional balancing, stooping, crouching, kneeling, and crawling; no climbing of ladders, ropes, or scaffolds; and no exposure to hazardous machinery or unprotected heights. Plaintiff also must use a cane to stand and ambulate. (R. 17-22).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could not perform any of his past relevant work but could still engage in a significant number of other jobs available in the national economy, including Document Preparer, Telephone Clerk, and Sorter. (R. 22-23). The ALJ thus found Plaintiff not

2

disabled at any time from the May 8, 2018 alleged disability onset date through the December 31, 2018 date last insured ("DLI"). (R. 23-24). The Appeals Council denied Plaintiff's request for review on February 9, 2021. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in evaluating the opinion evidence of record regarding his back pain and migraine headaches; (2) improperly ignored his need to change positions at will; and (3) erred in discounting his subjective statements regarding his symptoms. Plaintiff also argues that the decision in this case is constitutionally defective because it violates the separation of powers clause. As discussed below, this Court finds that the ALJ's decision is supported by substantial evidence and is not constitutionally defective.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act (the "SSA"). *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by

3

substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.  Five-Step Inquiry**

To recover DIB under the SSA, a claimant must establish that he is disabled within the meaning of the Act. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A person is disabled if he is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F.Supp.2d 618, 630 (N.D. Ill. 2009). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has

a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C. Analysis**

   **1. Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that the opinions from his treating occupational medicine specialist Timothy Sutton, M.D., and his treating primary care physician Aftab A. Khan, M.D., were not persuasive or supported by the record. Since Plaintiff filed his claims in March 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022)

(citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Sutton completed a Physical Residual Functional Capacity Questionnaire for Plaintiff on October 16, 2018. He stated that he had treated Plaintiff 3 times over the previous 4 months for traumatic brain and spinal cord injuries suffered in a November 2014 work accident. (R. 370, 371). Plaintiff's symptoms included: pain in the low back, right leg, and right hip; chronic migraines; depression; fatigue; difficulty balancing, standing, and walking; and numbness and weakness in the legs. (*Id.*). His treatment consisted of Baclofen (a muscle relaxant), medical cannabis, and home physical therapy exercises. (R. 371). Dr. Sutton opined that Plaintiff would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks, and is incapable of even "low stress" jobs. (R. 372). He can walk less than half a block without rest or severe pain, sit for 15 minutes at a time, stand for 5 minutes at a time, stand and walk for less than 2 hours in an 8-hour workday, and sit for about 2 hours in an 8-hour workday. (R. 372-73). Plaintiff also needs to walk for 2 minutes every 15 minutes or so, must shift positions at will, must take unscheduled 30-minute breaks every 20 minutes, and needs a cane when standing or walking. (R. 373).

6

In addition to these limitations, Dr. Sutton indicated that Plaintiff can occasionally lift and carry less than 10 pounds, rarely lift and carry 10 pounds, occasionally look down, rarely look up or turn his head right or left, and never twist, stoop, crouch, or climb ladders and stairs. (R. 373-74). Plaintiff has good days and bad days and would likely be absent more than 4 days per month as a result of his impairments. According to Dr. Sutton, the clinical findings and objective signs supporting these symptoms and limitations consisted of a positive straight leg raise test on the right, no Achilles reflex on the right, reduced patellar reflex on the right, 4/5 bilateral extremity strength, and limited range of motion in the spine. (R. 371).

On December 18, 2018, Dr. Sutton submitted a letter stating that Plaintiff suffers from chronic severe migraines, depression, and a degree of cognitive impairment. He also has significant disc herniation at 7 levels, along with degeneration and severe spinal stenosis, which causes substantial pain and weakness in the lower back, right hip, and right leg, as well as numbness in the legs that interferes with balance and ambulation. (R. 370). Dr. Sutton indicated that Plaintiff completed 2 courses of physical therapy and "a variety of other conservative treatments" but achieved no improvement in pain or functionality. In Dr. Sutton's opinion, Plaintiff is not a candidate for surgery, has reached "maximum medical improvement," and "is completely and totally disabled for all job types and classes." (*Id.*).

In discounting these opinions, the ALJ explained that they were not supported by or consistent with other record evidence. (R. 21). The Court finds no error in this assessment. First and foremost, the record does not contain a single treatment note from Dr. Sutton to corroborate the findings set forth in the questionnaire and the letter. (*Id.*).

7

As the Commissioner notes, this casts doubt on the nature of the exams and tests Dr. Sutton performed, as well as the bases for the extreme limitations he described. Plaintiff himself told his primary care physician Dr. Khan at his first visit on June 19, 2018 that his treatment with Dr. Sutton consisted of obtaining medical marijuana. (R. 21, 417). Given the total absence of supporting treatment notes, the ALJ reasonably concluded that Dr. Sutton's opinions appeared to be based primarily on Plaintiff's subjective complaints. (R. 21-22). And "[m]edical opinions upon which an ALJ should rely need to be based on objective observations, not a recitation of a claimant's subjective complaints." *Osborn v. Astrue*, No. 08 C 7395, 2010 WL 2772480, at *9 (N.D. Ill. July 12, 2010) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

Even accepting that as of October 16, 2018, Plaintiff had presented with a positive straight leg raise test on the right, no Achilles reflex on the right, reduced patellar reflex on the right, 4/5 bilateral extremity strength, and limited range of motion in the spine, there is no explanation for how these clinical findings translate into an inability to sit, stand, or walk for any length of time. (R. 371). Plaintiff needs to establish that he was disabled between the May 8, 2018 alleged onset date and the December 31, 2018 date last insured. *Sabo D. v. Saul*, No. 19 C 5948, 2021 WL 1315630, at *1 (N.D. Ill. Apr. 8, 2021) (citing *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Significantly, the treatment notes that do exist in the record fail to support Dr. Sutton's extreme limitations.

Plaintiff first started treating with Dr. Khan on June 19, 2018 to get medication for back pain and depression. At that time, he reported exercising 6 days per week for less than 30 minutes at a time. (R. 19, 417). On exam, Plaintiff exhibited painful range of motion in the lower back area but no other abnormalities. Dr. Khan told Plaintiff to stop

taking the muscle relaxant Baclofen and prescribed Lyrica for pain and Cymbalta for depression. (R. 19, 419). At a follow-up appointment on July 19, 2018, Plaintiff said the Cymbalta had only helped for a couple of weeks and he said he used a cane all the time due to continued back pain that traveled to the right leg. He also complained of migraines that left him unable to see out of his left eye. (R. 19, 414). An exam once again showed nothing but painful range of motion in the lower back. Dr. Khan refilled the Lyrica prescription and increased the Cymbalta dosage. (R. 19, 416).

Plaintiff next saw Dr. Khan on September 17, 2018 for medication management. His mood was stable but he complained of back pain "off and on." (R. 19, 411). On exam, Plaintiff had painful range of motion in the lower back. Dr. Khan assessed chronic depression, "other" chronic pain, and low back pain, and refilled Plaintiff's Lyrica and Cymbalta prescriptions. (R. 19, 413). The following month, on October 22, 2018, Plaintiff told Dr. Khan that his unidentified "pain Dr." thought he had all the symptoms of fibromyalgia. Plaintiff's mood remained stable but he still experienced pain in the lower back and now the hips as well. (R. 19, 408). An exam showed painful range of motion in both the lower back and hips. (R. 10, 410). Dr. Khan assessed low back pain, chronic depression, and arthritis, refilled the Lyrica prescription, started Plaintiff on Naprosyn for low back pain, and ordered x-rays of the hips and lumbar spine. (*Id.*). The October 24, 2018 hip x-ray was negative, and the lumbar spine x-ray taken the same day showed only mild lumbar spondylosis. (R. 365, 366).

When Plaintiff returned to Dr. Khan on November 5, 2018, he stated that the Naprosyn was not helping the pain and he also wanted an increase in the Cymbalta. (R. 404). On exam, Plaintiff had painful range of motion in the lower back but no other

9

abnormalities. Dr. Khan assessed low back pain and chronic depression, increased the Cymbalta dosage, and ordered a lumbar MRI. (R. 406). Contrary to Dr. Sutton's report of "severe spinal stenosis" (R. 370), the November 9, 2018 MRI showed: mild to moderate degenerative change involving the lumbar spine at T11-T12, T12-L1, L1-L2, L2-L3, L3-L4, L4-L5, and L5-S1; and disc disease at L4-L5 and L5-S1 that causes mild foraminal stenosis with mild abutment of the traversing right S1 nerve root in the L5-S1 lateral recess. (R. 19-20, 362-63). At a follow-up appointment with Dr. Khan on November 16, 2018, Plaintiff complained of continuing diffuse joint pains in the lower back and fatigue "on and off." (R. 20, 401). He once again had pain on range of motion in the lumbar spine, and for the first time a straight leg raise test was positive. (R. 20, 402). Dr. Khan refilled the Lyrica prescription and referred Plaintiff to an orthopedic surgeon. (R. 403).

There is no evidence in the record that Plaintiff ever pursued treatment with an orthopedic surgeon but he did return to Dr. Khan on December 17, 2018. He reported that the back pain was causing numbness in the right leg and left foot, he was having neck and right shoulder pain, and his migraines had increased to 2 to 3 times per week. (R. 20, 398). The notes reflect that Plaintiff was still exercising 6 days a week for less than 30 minutes each time. (*Id.*). His exam showed the same painful range of motion in the lower back area, and he was walking with a cane and a limp. Dr. Khan made no changes to Plaintiff's medication regimen but referred him to neurology for the migraines. (R. 20, 400).

Exams with Dr. Khan from January through May 2019 remained largely unchanged. On January 14, 2019, Plaintiff's headaches were slightly better though he continued to have painful range of motion in the lower back. (R. 395). On February 18,

2019, Plaintiff mentioned fatigue "on and off," had normal strength in the arms and legs and intact sensation, and was walking with a limp. (R. 393). Dr. Khan made no changes to Plaintiff's medications at these appointments. (R. 394, 397). At his March 8, 2019 visit, Plaintiff told Dr. Khan that he had dropped his cane and felt a popping on the left side of his back when he picked it up. (R. 389). An exam was unchanged but at Plaintiff's request, Dr. Khan gave him a 14-day course of cyclobenzaprine (a muscle relaxant). Dr. Khan also prescribed a 6-day course of Medrol Tablet Therapy Pack. (R. 391).

In June 2019, Plaintiff had an appendectomy that tested positive for cancer, and his condition appears to have worsened after that event. On July 22, 2019, Dr. Khan started Plaintiff on trazodone for pain. (R. 533). On August 26, 2019, Plaintiff told Stefanie Henline, NP, a nurse in Dr. Khan's office, that he had seen an orthopedist and pain specialist and had received multiple steroid injections. (R. 427). Those treatment notes are not in the record but an exam showed that Plaintiff had an unsteady gait, diminished strength of 3/5 in the legs, and diminished reflexes bilaterally. Nurse Henline assessed acute right lumbar radiculopathy, and ordered another back MRI. Plaintiff declined to attend a pain clinic, however, because the medical cannabis was "helping him greatly." (R. 429). The following month Plaintiff started receiving psychotherapy at Ottawa Choices Behavioral Health. (R. 559).

Plaintiff fails to explain how any of these records support Dr. Sutton's conclusion that he could barely sit, stand, or walk as of the December 31, 2018 DLI. *Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record."). Exams

11

routinely showed painful range of motion in the lower back but no other abnormalities aside from one mention of hip pain on October 22, 2018 and a positive straight leg raise test on November 16, 2018. Plaintiff also received conservative treatment consisting only of home physical therapy exercises and medication (Baclofen, Lyrica, Cymbalta, medical cannabis, one 6-day course of a Medrol Tablet Therapy Pack in March 2019, one 2-week course of cyclobenzaprine in March 2019, and trazodone starting in July 2019). In August 2019, Plaintiff claimed to have had several steroid injections but the record contains no such treatment notes, this was 8 months after the December 31, 2018 DLI, and steroid injections are considered conservative in any event. (R. 427). *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (characterizing prescription pain medication, physical therapy, and epidural steroid injections for back pain as conservative treatment). Even putting aside the complete absence of treatment notes from Dr. Sutton, the ALJ did not commit reversible error in finding his opinions unsupported by, and inconsistent with, the other evidence in the record.

For similar reasons, the ALJ reasonably discounted Dr. Khan's December 17, 2018 letter stating that Plaintiff "is unable to work due to low back pain with numbness and tingling to lower extremities." (R. 21, 369). To begin, the ALJ discussed all of the medical evidence and properly considered Dr. Khan's opinion regarding Plaintiff's ability to work despite noting generally that the determination of disability is one for the Commissioner. (R. 21). *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("[A] medical opinion that a claimant is unable to work is not an improper legal conclusion."). Plaintiff fails to explain how Dr. Khan's own medical records, which document only painful range of motion in the lower back that was treated with medication, support the extreme limitations

endorsed in his letter. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes."); *Fair v. Saul*, 853 F. App'x. 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions."). Nor is there evidence of disabling leg numbness and tingling. Plaintiff first mentioned leg numbness in December 2018, but he denied having that symptom in February and March 2019. (R. 389, 392, 398). It was not until July 2019, seven months after the DLI, that Plaintiff started complaining of constant numbness in the right leg. (R. 431). And the first time Plaintiff mentioned tingling was in August 2019. (R. 428).

Dr. Khan's observations about "neck and right shoulder pain" and "severe migraines" are similarly lacking in evidentiary support. (R. 369). Plaintiff did complain of neck and right shoulder pain on December 17, 2018 (R. 398), but he did not mention it again until September 2019, and then it was only during his first appointment with a psychotherapist. (R. 559). With respect to Plaintiff's migraines, he reported having these headaches on July 19 and December 17, 2018 (R. 398, 414), but he did not receive any specific migraine-related treatment aside from the medical cannabis he got through Dr. Sutton.[2] In fact, on August 26, 2019, Plaintiff told Nurse Henline that even though his headaches had increased in frequency he did not need any medications at that time. (R. 427). This contrasts sharply with Plaintiff's testimony that he got ocular migraines 2 to 3 times a week that were at times "hell." (R. 50-51). *Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422,

---

[2] The only evidence that Plaintiff was receiving medical cannabis, aside from his own statements, is an Illinois Medical Cannabis Pilot Program form that Dr. Sutton completed on December 31, 2018, the DLI. (R. 380-81).

13

426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

The mere fact that Plaintiff was diagnosed with migraines "does not mean they imposed particular restrictions on h[is] ability to work. . . . It was [Plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting h[is] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018). Plaintiff has not done so here. As a result, there is no merit to Plaintiff's related objection that he would have been absent a work-preclusive amount of time for migraines prior to the December 31, 2018 DLI. (Doc. 17, at 12-13; Doc. 24, at 3). The ALJ reasonably rejected Dr. Sutton's opinion and Plaintiff's testimony to that effect given the lack of supporting objective evidence and Plaintiff's receipt of conservative treatment. *Compare Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (ALJ erred in rejecting treating neurologist's opinion that the plaintiff had "continuous unremitting headaches" where she had a nerve stimulator implanted to control pain).

It is also worth noting that State agency reviewers Marion Panepinto, M.D., and Ranga Reddy, M.D., both concluded on May 21, 2019 and October 10, 2019, respectively, that prior to the DLI, Plaintiff had the ability to: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (R. 119-21, 132-34). The ALJ found both of these opinions persuasive and incorporated most of these limitations into the RFC for sedentary work. (R. 16, 21). As the ALJ explained, the RFC accounted for Plaintiff's back deficiencies by limiting him to no climbing of ladders,

14

ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and no work around hazardous machinery or unprotected heights. (R. 20). And to accommodate evidence that Plaintiff walked with a limp and used a cane, the ALJ restricted him to sedentary work that allowed for the use of a cane to stand and walk. (R. 17, 20).

"Substantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Viewing the record as a whole, the ALJ fairly considered all of the opinion evidence of record, and his conclusion that the extreme limitations imposed by Dr. Sutton and Dr. Khan were not persuasive is supported by substantial evidence.

### 2. Need to Change Positions

Plaintiff argues that the case must still be reversed or remanded because the RFC does not properly account for his need to change positions at will. Plaintiff says this omission is important because the VE testified that a person who uses a cane and needs a sit/stand option would not be able to perform any sedentary work. (Doc. 17, at 11-12) (citing R. 55-56). A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 404.1527(f)(2). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations

15

supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022).

In support of his claimed need to switch positions at will, Plaintiff first cites to Dr. Sutton's October 16, 2018 questionnaire where he checked "Yes" in response to the question "Does your patient need a job that permits shifting positions at will from sitting, standing or walking?", and indicated that Plaintiff would need to take 30-minute unscheduled breaks every 20 minutes. (R. 373; Doc. 17, at 11). For reasons stated, the ALJ reasonably determined that Dr. Sutton's opinion was not persuasive because he provided no treatment notes and his conclusions were not consistent with or supported by the other objective evidence in the record.

That leaves Plaintiff's own statements that in 2018 he could only sit for 10 minutes before needing to stand up, walk, or lay down. (R. 48). The ALJ acknowledged this testimony but found it inconsistent with the objective evidence and Plaintiff's conservative treatment history. (R. 18, 19). *See, e.g., See Grotts, v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence."). This determination was not patently wrong. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). Plaintiff finds it significant that during the administrative hearing he used the speaker function and had to change positions. (Doc. 17, at 11) (citing R. 37). But that was in September 2020, almost 2 years after the December 31, 2018 DLI.

Viewing the record as a whole, the ALJ did not commit reversible error in finding that Plaintiff did not need to change positions at will prior to the DLI. Plaintiff's request to reverse or remand the case for further consideration of this issue is denied.

### 3. Subjective Symptom Evaluation

Plaintiff next argues that the case requires remand because the ALJ erred in assessing his subjective statements regarding his symptoms. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th at 1278). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy*, 759 F.3d at 816.

Plaintiff objects that the ALJ improperly discounted his testimony solely because it was not supported by objective medical evidence. (Doc. 24, at 3) (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). This is not accurate. As noted earlier, the ALJ also cited to Plaintiff's conservative course of treatment, predominantly involving medication

17

management with his primary care physician. (R. 19, 20). *See Sherry v. Colvin*, No. 13 C 4825, 2016 WL 305358, at *8 (N.D. Ill. Jan. 26, 2016) (a "lack of aggressive treatment for pain despite complaints of disabling pain" is "an entirely valid basis for finding a claimant's testimony not credible.").

Also unavailing is Plaintiff's assertion that the ALJ somehow interpreted the results of his November 9, 2018 MRI and so played doctor. (Doc. 17, at 13-14). The ALJ stated that the MRI showed "mild to moderate degenerative change involving the lumbar spine," and "[d]isc disease at L4-L5 and L5-S1 that causes mild foraminal stenosis with mild abutment of the traversing right S1 nerve root in the L5-S1 lateral recess." (R. 19-20). Radiologist Isa Furquaan, M.D., reviewed Plaintiff's MRI and his impression included these exact findings. (R. 362-63). The ALJ accurately cited to Dr. Furquaan's conclusions, which is not an "interpretation" of the record but "merely a summary of what the doctor said that the MRI revealed. An ALJ does not play doctor when he summarizes an expert's conclusions." *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *7 (N.D. Ill. May 28, 2019).

"The ALJ's credibility assessment need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). The ALJ provided valid reasons for discounting Plaintiff's subjective complaints, did not play doctor, and did not commit reversible error supporting a remand of this case.

### 4. Constitutional Argument and the Separation of Powers Clause

Plaintiff finally seeks remand based on a constitutional separation of powers challenge. Plaintiff argues that the statutory removal protection for a Commissioner of

18

Social Security found in 42 U.S.C. § 902(a)(3) is a constitutionally defective delegation of power because the Commissioner is allowed to serve for a longer term than the President and cannot be removed except for cause. (Doc. 17, at 14-15). In Plaintiff's view, since the Commissioner's statutory authority is defective, the ALJ and the Appeals Council operating under the Commissioner exercised power they did not lawfully possess, compelling remand under Supreme Court precedent in *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020). (*Id.*).

Plaintiff's "failure to show that any injury resulted from this allegedly invalid delegation of authority makes this argument a nonstarter." *Michelle S. v. Kijakazi*, No. 21 C 2577, 2022 WL 4551967, at *6 (N.D. Ill. Sept. 29, 2022). The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Doc. 23, at 2) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.")). Under the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), however, a claimant seeking relief on that basis must show that "the restriction actually caused h[im] harm in 'some direct and identifiable way.'" *Michelle S.*, 2022 WL 4551967, at *6 (quoting *Cheryl T. v. Kijakazi*, No. 20 C 6960, 2022 WL 3716080, at *4 (N.D. Ill. Aug. 29, 2022)). "[T]he mere fact of a disappointing outcome on [an] application for Social Security benefits will not suffice." *Id.*

Here, Plaintiff identifies no harm that he suffered aside from the denial of his request for disability benefits. In accordance with the overwhelming weight of authority in this circuit and nationwide, this Court finds Plaintiff's constitutional argument without

merit.  *See Lissette B. v. Kijakazi*, No. 20 C 7685, 2023 WL 2572431, at *2 (N.D. Ill. Mar. 20, 2023); *Kristen K. v. Kijakazi*, No. 20 C 5177, 2022 WL 6123338, at *6 (N.D. Ill. Oct. 7, 2022);  *Michelle S.*, 2022 WL 3716080, at *7 (collecting cases).

## CONCLUSION

For reasons stated above, Plaintiff's Motion for Summary Judgment [16] is denied and the Commissioner's Motion for Summary Judgment [22] is granted.  The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: March 27, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge